57 So.2d 824

## RAY v. GARNER.

### 6 Div. 403.

Supreme Court of Alabama.

March 27, 1952.

Horace C. Wilkinson and Maurice F. Bishop, Birmingham, for appellee.

Harold M. Cook, Birmingham, and Geo. A. LeMaistre, Gordon Madison and Jas. J. Mayfield, all of Tuscaloosa, for appellant.

SIMPSON, Justice.

Appeal from a judgment of the circuit court of Jefferson County, Alabama (Judges McElroy and Windham, sitting), denying appellant's petition for a writ of mandamus to require the appellee, as judge of probate of said county, to have printed on the official ballot for the coming Democratic primary elections to be held May 6 and June 3, 1952, the voter pledge prescribed by the resolution of the State Democratic Executive Committee adopted January 26, 1952.

The pledge reads: "By casting this ballot I do pledge myself to abide by the result of this Primary Election and to aid and support all the nominees thereof in the ensuing General Elections. *I do further pledge myself to aid and support the nominees of the National Convention of the Democratic Party for President and Vice-President of the United States."* (Emphasis supplied.)

The argument seems to assume that the real question concerns the validity and effect, *vel non,* of that feature italicized above which provides that to entitle one to vote in such primary elections, he must not only agree by participating in said primary elections to abide by the result and to aid and support the nominees thereof in the ensuing general election, but also to aid and support the nominees of the National Convention of the Democratic Party for President and Vice-President. It is this latter feature of the pledge which has invoked this litigation and which the lower court held could not be required of the probate judge to have printed on the official ballot.

Specifically, the statute, Title 17, § 350 prescribes the voter pledge to be printed on the official ballots and § 352 prescribes the form in which the ballots shall be substantially printed. Said § 350 stipulates that at the bottom of the ballot shall be printed the words: "By casting this ballot I do pledge myself to abide by the result of this primary election and to aid and support all the nominees thereof in the ensuing general election" (identical in language of the first clause of the text quoted above).

The essence of the holding of the lower court was that the respondent judge could not be required to vary the language of the voter test because the statutory one is exclusive. We affirm the judgment denying the writ on the basis of the considerations later to be noted.

In view of the argument of counsel and the oral statement of the court below when rendering the judgment, we think it proper to preface decision by adverting to certain well-settled principles of law in connection with the very pertinent observation that decision does not of itself turn upon the authority of the State Committee to pass the test resolution or the binding effect of that pledge on the voter. The narrow question is whether or not the judge of probate can be required to have printed on the official ballot a voting test other

than that as prescribed by law. As stated, we hold that he cannot be, although, as we will show, we do not think the printing of the full pledge required by the Committee resolution would in any way invalidate the ballot.

### General Principles

The State Executive Committee of a party has full right, power and authority to fix and prescribe the political and other qualifications of its own members and to determine who shall be entitled and qualified to vote in primary elections or be candidates or otherwise participate therein, Title 17, § 347, Code 1940; Smith v. McQueen, 232 Ala. 90, 166 So. 788; 29 C.J.S., Elections, § 87, P. 120, just so such Committee action does not run afoul of some statutory or constitutional provision. Ray v. Blair, Ala.Sup., 57 So.2d 395;[1] Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110. We see nothing in Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984, 88 A.L.R. 458, contrary to this principle. See 286 U.S. at page 88, 52 S.Ct. at page 487, 88 A.L.R. at page 464.

And subsumed under this general principle is the well-nigh universal concept that "a test by a political organization of party affiliation and party fealty is reasonable and proper to be prescribed for those participating in its primary elections for nomination of candidates for office", Lett v. Dennis, 221 Ala. 432, 433, 129 So. 33, 34, and in Alabama this prerogative is vested in the State Party Executive Committee, acting through its duly elected or chosen members. Smith v. McQueen, supra.

There are other pertinent facets of the general principle which are also of material consideration: (1) The State Executive Committee of a party may exclude from party action all persons save those holding a present party allegiance and having a bona fide present intention to support the party nominees, unless there be some statutory or constitutional interdiction to the contrary. (2) Every participant in a party primary election obligates himself to support the party nominees, even though such support be not expressly pledged or promised, such obligation inhering in the very nature of his act, regardless of any express pledge or requirement of statute, although being unenforceable through the courts because it is merely a moral obligation, binding no longer than it could be conscientiously performed. State ex rel. Adair v. Drexel, 74 Neb. 776, 105 N.W. 174; Love v. Buckner, 121 Tex. 369, 49 S.W.2d 425; Chapman v. King, 5 Cir., 154 F.2d 460, 462. (3) The printed test on the ballot is for information to the voter as to the effect of his voting, but it is the act of voting which creates the pledge. And with respect to the case in hand, there is nothing in the pledge prescribed by the resolution which violates any statute or constitutional right and the party committee was clearly within its authority to pass the resolution so providing; and while the statute is specific as to what *shall* be printed on the ballot, § 350, supra, there is nothing prohibitory to printing other words which would convey full information to the elector as to the nature and effect of his voting. We deduce, therefore, that had the judge of probate elected to have printed on the ballot the entire voter test proposed by the resolution, the ballot would not thereby be invalidated. (4) Primarily, the pledge must be germane to party membership and party elections and, while the last clause of the pledge pertains to the national party, the party in Alabama will be a part of it by sending delegates to participate in the national convention, the Executive Committee having ordered their election and the party thereby having signified its intention to become a member of the national party. Therefore, it was within the competency of the Committee to adopt the resolution so binding the voters in the primary. (5) If, by reason of the Democratic nominees for President and Vice-President, the Democratic voters of Alabama in the general election should possibly be faced with an inconsistent position because of the nomination of presidential electors refusing to pledge to support such national convention nominees, the latter clause of the pledge may be disregarded as of no binding effect, since the statutory pledge the voter

---

1. Ante, p. 151.

took by voting in the primary would supersede any in conflict which may have been added by the Committee.

## Mandamus

But this is not to say that the judge of probate can be forced to print on the ballot anything other than that which the statute prescribes. It is so clear that he cannot be that little discussion is necessary.

■ The governing rule, of course, is that the extraordinary writ of mandamus is only granted when there is a *clear, specific legal right* made to appear, for the enforcement of which there is no other adequate remedy. Smith v. McQueen, supra, (1).

■ The statute §§ 350 and 352, prescribes the pledge which the probate judge shall have printed on the ballot and he cannot by mandamus be required to do anything but that which the law requires him to do.

There is no provision of law requiring or authorizing the State Committee or its Chairman to certify any information of any kind to the various judges of probate. Section 344, as amended, does provide that the Chairman of the State Committee shall certify to the Secretary of State the names of all candidates for office except county offices and that the Secretary of State shall certify these names to the probate judges of the several counties, who shall thereupon cause the official ballot to be printed, but that is the extent of the provision as here pertinent. There is no authority of law for the Committee or its Chairman to direct the probate judges what shall be printed on the ballot. The statute makes this proviso in § 350, supra, and if a probate judge, as here, elects not to print the full text of the voter pledge as prescribed by the State Committee in order to more fully inform the voter of the effect of his voting, but on the other hand elects to stand on the requirements of the statute, it is apodictic that there is no law to force him to do otherwise. He cannot by mandamus be required to do anything but that which he is required by law to do and if he performs this duty by printing only what the law

provides, the courts will not require him to do more.

The cases cited from other jurisdictions to sustain the contrary view are inapposite, since the statutory provisions with reference to the furnishing of the official ballots are not the same as ours. As instance, the Texas cases cited, such as Varela v. Perales, Tex.Civ.App., 184 S.W.2d 637; there the primary election law conferred authority upon the party executive committee to furnish the election judges the ballots for the primary election.

Neither can we see any merit in the contention that the judge of probate is required to take judicial knowledge of the Committee's resolution and therefore be required to print the full text of the pledge on the ballot, just because § 346 provides that when it shall be decided by the State Executive Committee or governing body of any political party to enter the primary election ordered to be held under the provisions of the statute, said Committee or governing authority thereof shall give public notice by filing a copy of the resolution of such governing body with the Secretary of State. At most, the only requisite judicial knowledge which one would be required to take of the Committee's resolution would be the notice that the political party desires to have a primary election.

We hold, therefore, that the judgment denying the writ was proper.

Affirmed.

All the Justices concur.

BROWN, FOSTER, and STAKELY, JJ., concur in the opinion.

LIVINGSTON, C. J., concurs in the result.

LAWSON and GOODWYN, JJ., concur specially

LAWSON, Justice (concurring specially).

I concur in the conclusion reached on the ground that the State Democratic Executive Committee is without power to require the printing on the ballots of a pledge different

from that which the statute requires to be printed thereon. I also agree that if the pledge prescribed by the Committee is printed on the ballots in some counties, those ballots will not be invalidated; but it seems to me that, in order to avoid confusion every effort should be made that the ballots in all counties shall contain only the statutory pledge.

The other matters treated by the majority seem to me to be unnecessary to a decision in this case and I express no opinion thereon.

GOODWYN, Justice (concurring specially).

I concur in the affirmance of the decision of the lower court. However, it is my view that portions of the majority opinion deal with questions not involved in this case. In such respects the conclusions reached are *dicta* and therefore lack the authoritativeness of law.